## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RSS CSMC2021 – ADV – DE AUR, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ADVENTUS US REALTY #4 LP, a Delaware limited partnership; ADVENTUS US REALTY #5 LP, a Delaware limited partnership; ADVENTUS US REALTY #6 LP, a Delaware limited partnership; ADVENTUS US REALTY #8 LP, a Delaware limited partnership; ADVENTUS US REALTY #11 LP, a Delaware limited partnership; ADVENTUS US REALTY #13 LP, a Delaware limited partnership; ADVENTUS AOF #1 LP, a Delaware limited partnership; ADVENTUS AOF #2 LP, a Delaware limited partnership; and ADVENTUS  HOLDINGS LP, a Delaware limited partnership,<br><br>Defendants. | Civil Case No. 1:23-cv-08231 |

## <u>COMPLAINT</u>

Plaintiff RSS CSMC2021-ADV-DE AUR, LLC, a Delaware limited liability company ("<u>Lender</u>" or "<u>Plaintiff</u>"), sues Defendants ADVENTUS US REALTY #4 LP, a Delaware limited partnership ("<u>Adventus 4</u>"), ADVENTUS US REALTY #5 LP, a Delaware limited partnership ("<u>Adventus 5</u>"), ADVENTUS US REALTY #6 LP, a Delaware limited partnership ("<u>Adventus 6</u>"), ADVENTUS US REALTY #8 LP, a Delaware limited partnership ("<u>Adventus 8</u>"), ADVENTUS US REALTY #11 LP, a Delaware limited partnership ("<u>Adventus 11</u>"), ADVENTUS US REALTY #13 LP, a Delaware limited partnership ("<u>Adventus 13</u>"), ADVENTUS AOF #1 LP, a Delaware limited partnership ("<u>Adventus 1</u>"), ADVENTUS AOF #2 LP, a Delaware limited partnership ("<u>Adventus 2</u>" and together with Adventus 1, Adventus 4,

Adventus 5, Adventus 6, Adventus 8, Adventus 11, and Adventus 13, the "Borrowers"), and ADVENTUS HOLDINGS LP, a Delaware limited partnership (the "Guarantor" and together with the Borrowers, the "Defendants"), and states as follows:

## SUMMARY OF THE ACTION

1. By this action, Lender seeks to protect the collateral securing the repayment of a defaulted $350 million Loan (defined below) from material waste. To that end, Lender seeks to enforce its Loan Documents and the appointment of a receiver to operate the eight office buildings securing the Loan, which are located in multiple districts.

2. Lender is an assignee of the $350 million Loan made to Borrowers in connection with the refinance of the Real Property (defined below) securing the Loan. The Loan is a securitized commercial loan, the proceeds of which are for the benefit of third-party investors.

3. Borrowers are eight separate affiliated entities organized for the purpose of owning, managing, and operating the Real Property.

4. Guarantor is a direct or indirect owner of six of the Borrowers.

5. Borrowers stopped making their required monthly debt service and reserve payments beginning with the payments coming due in March 2023 and failed to repay the Loan upon its maturity on July 9, 2023. Borrowers also stopped paying expenses necessary to operate the Real Property and comply with obligations to tenants. Unpaid expenses include critical life safety obligations, basic utilities, security and other day-to-day operating expenses for the Real Property. A plethora of contractors have asserted claims of lien against the Real Property because they have gone unpaid by Borrowers. In several instances, power disconnections and other discontinuances of critical services have been averted only by the discretionary release of funds by Lender.

6.     Borrowers notified the Lender that they do not intend to fund any expenses for the operating of the Real Property, thereby necessitating the appointment of a receiver to stabilize the situation and ensure that the value of the Real Property is protected.

7.     Borrowers have also engaged in the systematic and unlawful transfer of funds to their affiliates, including the Guarantor, since the inception of the Loan.  Financial records show that Borrowers made numerous large transfers to affiliates as well as payments for their or their affiliates' benefit. Though the financial records also show transfers from the affiliates to Borrowers, their net transfers out are substantial and have caused Borrowers to become insolvent. Borrowers' conveyances between 2021 and 2023 resulted in a net transfer of approximately $93.92 million.  Over $3 million has been transferred out after Borrowers stopped making payments on the Loan in March of 2023.

8.     Through these transfers, Borrowers have misappropriated the rental income from the Properties that secure the Loan.  The magnitude of these transactions is so great that Borrowers are not only unable to meet any of their obligations under the parties' Loan Agreement (defined below), but also unable to support the basic operating needs of the Properties.

9.     Lender has been damaged as a result of Borrowers' and Guarantor's breaches of the Loan Documents and seeks a judgment determining the full amount of the Indebtedness (defined below), as well as the immediate appointment of a receiver to protect, preserve, and sell the Encumbered Property (defined below).

## PARTIES, JURISDICTION AND VENUE

10.     Lender is a Delaware limited liability company.  Lender's sole member is Wells Fargo Bank, N.A., in its capacity as Trustee in Trust for Holders of CSMC 2021-AV, Commercial Mortgage Pass-Through Certificates, Series 2021-ADV, a Real Estate Mortgage Investment

Conduit ("REMIC")[1] created under the Internal Revenue Code, 26 U.S.C. § 860D (the "Trust"). The Trust acts through its Trustee, Wells Fargo Bank, N.A. ("Wells Fargo").  Therefore, Lender's citizenship is determined by the citizenship of Wells Fargo, which is a national banking association with its principal place of business in Sioux Falls, South Dakota.  Accordingly, pursuant to 28 U.S.C. § 1348, Lender is a citizen of South Dakota.

11.     Adventus 1 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 1 are: (a) Adventus AOF TPC GP LLC; and (b) Adventus US Opportunity LP. Adventus AOF TPC GP LLC's sole member is Adventus US Opportunity GP LLC, whose sole member is Adventus Opportunity Services, Inc. Adventus Opportunity Services, Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia.  Adventus US Opportunity LP's partners are: (i) Adventus US Opportunity GP LLC, which is wholly owned by Adventus Opportunity Services Inc.; and (ii) Adventus Opportunity Fund. Adventus Opportunity Fund's trustee is Adventus Opportunity Services, Inc. Adventus 1 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

12.     Adventus 2 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia.  The partners of Adventus 2 are: (a) Adventus AOF 1600 GP LLC; and (b) Adventus US Opportunity LP. Adventus AOF 1600 GP LLC's sole member is Adventus US Opportunity GP LLC, whose sole member is Adventus Opportunity Services, Inc. Adventus Opportunity Services, Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. The partners of Adventus US Opportunity LP are: (i) Adventus US Opportunity GP LLC, whose sole member is Adventus Opportunity Services Inc.; and (ii)

---

[1]   A REMIC trust is a type of multiclass mortgage-related security in which interest and principal payments from the mortgage related assets serving as collateral are structured into separately traded securities called classes.

Adventus Opportunity Fund. Adventus Opportunity Fund's trustee is Adventus Opportunity Services, Inc. Adventus 2 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

13.     Adventus 4 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 4 are: (a) Adventus Holdings LP; and (b) Adventus Crossings GP LLC. The partners of Adventus Holdings LP are: (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings LP. The partners of Adventus Realty Canada Holdings LP are: (y) Adventus Realty Services Inc.; and (z) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust. Adventus Crossings GP LLC's sole member is Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc. Adventus Realty Services Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. Adventus 4 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

14.     Adventus 5 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 5 are: (a) Adventus Cantera GP LLC; and (b) Adventus Holdings LP. Adventus Cantera GP LLC's sole member is Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services, Inc. The partners of Adventus Holdings LP are: (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings LP. The partners of Adventus Realty Canada Holdings LP are: (y) Adventus Realty Services Inc.; and (z) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust. Adventus Realty Services Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. Adventus 5 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

15.     Adventus 6 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 6 are: (a) Adventus Rosemont GP LLC; and (b) Adventus Holdings LP. Adventus Rosemont GP LLC's sole member is Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services, Inc. The partners of Adventus Holdings LP are: (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings LP. Adventus Realty Canada Holdings LP is owned by (y) Adventus Realty Services Inc.; and (z) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust.  Adventus Realty Services Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. Adventus 6 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

16.     Adventus 8 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 8 are: (a) Adventus Barrett Lakes LP; and (b) Adventus Kennesaw GP LLC. The partners of Adventus Barrett Lakes LP are: (i) Adventus Kennesaw GP LLC; and (ii) Adventus Holdings LP. Adventus Kennesaw GP LLC's sole member is Adventus Kennesaw Mezz GP LLC, whose sole member is Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services, Inc. The partners of Adventus Holdings LP are: (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings LP. The partners of Adventus Realty Canada Holdings LP are: (y) Adventus Realty Services Inc.; and (z) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust. Adventus Realty Services Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. Adventus 8 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

17.     Adventus 11 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 11 are: (a) Adventus Parkwood GP

LLC, whose sole member is Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services, Inc.; and (b) Adventus Holdings LP. The partners of Adventus Holdings LP are: (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings LP. The partners of Adventus Realty Canada Holdings LP are: (y) Adventus Realty Services Inc.; and (z) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust. Adventus Realty Services Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. Adventus 11 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

18.     Adventus 13 is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. The partners of Adventus 13 are: (a) Adventus Milton GP LLC, whose sole member is Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services, Inc.; and (b) Adventus Holdings LP. The partners of Adventus Holdings LP are: (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings LP. The partners of Adventus Realty Canada Holdings LP are (y) Adventus Realty Services Inc.; and (z) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust. Adventus Realty Services Inc. is a Canadian corporation with its principal place of business in Vancouver, British Columbia. Adventus 13 is, therefore, a citizen of a foreign state as defined by 28 U.S.C. §§ 1332 and 1603.

19.     Guarantor is a Delaware limited partnership with its principal place of business in Vancouver, British Columbia. Guarantor is owned by (i) Adventus US Holdings GP LLC, whose sole member is Adventus Realty Services Inc.; and (ii) Adventus Realty Canada Holdings Limited Partnership. Adventus Realty Canada Holdings Limited Partnership is owned by (a) Adventus Realty Services Inc.; and (b) Adventus Realty Trust. Adventus Realty Services Inc. is the trustee of Adventus Realty Trust. Adventus Realty Services Inc. is a Canadian corporation with its

principal place of business in Vancouver, British Columbia. Guarantor is, therefore, a citizen of a foreign state as defined by 28 US.C. §§ 1332 and 1603.

20.     Guarantor holds at least a 99.5% equity interest in Adventus 4, Adventus 5, Adventus 6, Adventus 11 and Adventus 13.  Adventus 8 is 99.5% owned by Adventus Barrett Lakes, LP, which in turn is 99.5% owned by Guarantor.

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  There is complete diversity between Lender, which is a citizen of South Dakota, and Defendants, which are each citizens of British Columbia.

22.     This Court also has personal jurisdiction over Defendants.  In the Loan Agreement (defined below), Borrowers agreed that they would be subject to personal jurisdiction in the State of New York. Specifically, each of the Borrowers agreed that it "irrevocably submits to the jurisdiction" of "any federal or state court in the City of New York, County of New York . . .." *See* **Exhibit A**, Loan Agreement § 10.3(b).  Similarly, Guarantor agreed that it "irrevocably submits to the jurisdiction of any [New York] court in any suit, action or proceeding."  *See* **Exhibit D**, Guaranty § 5.3(b).

23.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the Loan Agreement was negotiated, made by Original Lender (as defined below) and accepted by Borrowers, and the proceeds of the Loan were disbursed from, the State of New York. Moreover, the Loan Agreement states that "[a]ny legal suit, action or proceeding against Lender or Borrower arising out of or relating to this Agreement or the Other Loan Documents may at Lender's option be instituted in any federal or state court in the City of New York, County of New York, pursuant to Section 5-1402 of the New York General Obligations Law, and Borrower waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit,

action or proceeding . . ..” *See* **Exhibit A**, Loan Agreement § 10.3(b).  Section 5.3 of the Guaranty (defined below) contains a substantially similar provision in which Guarantor agreed to venue in the State of New York.  *See* **Exhibit D**, Guaranty § 5.3(b).

## FACTUAL BACKGROUND

### A.  The Loan Origination

24.     On or about July 1, 2021, Column Financial, Inc., a Delaware corporation (“Original Lender”), made a loan to Borrowers in the original principal amount of $350,000,000.00 (the “Loan”) as more particularly described in that certain Loan Agreement by and between Original Lender and Borrowers dated as of July 1, 2021 (the “Loan Agreement”).  A true and correct copy of the Loan Agreement is attached as **Exhibit A**.

25.     As evidence of the obligation to repay the debt created by the Loan, Borrowers made and delivered that certain *Promissory Note* dated July 1, 2021, in favor of Original Lender, in the principal amount of Three Hundred Fifty Million Dollars ($350,000,000.00) (the “Note”). A true and correct copy of the Note is attached as **Exhibit B**.

26.     The repayment of the Note is secured by, among other things, that certain (i) *Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* granted by Adventus 4 and recorded on July 8, 2021, as Instrument Number R2021-103510  in the Recorder’s Office of DuPage County, Illinois (“Adventus 4 Mortgage”), encumbering property located at 1420 and 1520 Kensington Road in Oak Brook, Illinois (the “Oak Brook Property”); (ii) *Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* granted by Adventus 5 and recorded on July 8, 2021 as Instrument Number R2021-103522 in the Recorder’s Office of DuPage County, Illinois (“Adventus 5 Mortgage”), encumbering property located at 28100 Torch Parkway in Warrenville, Illinois (the “Warrenville Property”); (iii) *Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* granted by Adventus 6 and recorded on

July 23, 2021, as Instrument Number 2120401126 in the Recorder's Office of Cook County, Illinois ("Adventus 6 Mortgage"), encumbering property located at 5600 N. River Road and 9450 W. Bryn Mawr in Rosemont, Illinois (the "Rosemont Property"); (iv) *Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* granted by Adventus 8 and recorded on July 19, 2021 with Clerk of the Superior Court in Cobb County, Georgia, in Deed Book 15943, Page 2100 ("Adventus 8 Mortgage"), encumbering property located at 1701-1825 Barrett Lakes Boulevard and 1940 Lodge Road in Kennesaw, Georgia (the "Kennesaw Property"); (v) *Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* granted by Adventus 11 and recorded on July 19, 2021 with Clerk of the Superior Court in Cobb County, Georgia, in Deed Book 15943, Page 2149 ("Adventus 11 Mortgage"), encumbering property located at 1000 Parkwood Circle in Atlanta, Georgia (the "1000 Parkwood Property"); (vi) *Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* granted by Adventus 13 and recorded on July 15, 2021 with Clerk of the Superior Court in Fulton County, Georgia, in Deed Book 64160, Page 402 ("Adventus 13 Mortgage"), encumbering property located at 30000 Mill Creek Avenue and 11175 Cicero Drive in Alpharetta, Georgia (the "Alpharetta Property"); (vii) *Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* granted by Adventus 1 and recorded on July 19, 2021 with Clerk of the Superior Court in Cobb County, Georgia, in Deed Book 15943, Page 2007 ("Adventus 1 Mortgage"), encumbering property located at 125, 175, 225, 500 Town Park Drive in Kennesaw, Georgia (the "Town Park Property"); and (viii*) Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* granted by Adventus 2 and recorded on July 19, 2021 with Clerk of the Superior Court in Cobb County, Georgia, in Deed Book 15943, Page 2053 ("Adventus 2 Mortgage"), encumbering property located at 1600 Parkwood Circle in Atlanta, Georgia (the "1600 Parkwood Property" and, together with the Oak Brook Property, the

Warrenville Property, the Rosemont Property, the Kennesaw Property, the 1000 Parkwood Property, the Alpharetta Property and the Town Park Property, the "Real Property" or "Properties"). The Adventus 4 Mortgage, the Adventus 5 Mortgage, the Adventus 6 Mortgage, the Adventus 8 Mortgage, the Adventus 11 Mortgage, the Adventus 13 Mortgage, the Adventus 1 Mortgage and the Adventus 2 Mortgage are collectively referred to herein as the "Mortgages". True and correct copies of the Mortgages are attached hereto as **Composite Exhibit "C"**.

27.     The Mortgages also created a security interest in the personal property described in Article I, Section 1.1(b) – (w) of each of the Mortgages, which includes without limitation, rents (the "Personal Property", together with the Real Property, the "Encumbered Property").

28.     To induce Original Lender to make the Loan to Borrowers, and in consideration of making the Loan, Guarantor executed and delivered to Original Lender that certain Guaranty Agreement dated July 1, 2021 ("Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit "D"**. The Guaranty is an "irrevocable, absolute, continuing guaranty of payment and performance of the "Guaranteed Obligations" (as this term is defined in the Guaranty). *See* **Exhibit D**, Guaranty § 1.3.

29.     On July 6, 2021, Original Lender perfected its security interest in the Personal Property of: (i) Adventus 4 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 20215254504 (the "Adventus 4 State UCC"); (ii) Adventus 5 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 20215254561 (the "Adventus 5 State UCC"); (iii) Adventus 6 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 20215254587 (the "Adventus 6 State UCC"); (iv) Adventus 8 by filing a UCC Financing Statement with the Delaware Secretary of State, with

Borrower as debtor and Original Lender as secured party, under Filing No. 20215254702 (the "Adventus 8 State UCC"); (v) Adventus 11 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 20215254751 (the "Adventus 11 State UCC"); (vi) Adventus 13 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 20215254827 (the "Adventus 13 State UCC"); (vii) Adventus 1 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 20215254322 (the "Adventus 1 State UCC"); (viii) Adventus 2 by filing a UCC Financing Statement with the Delaware Secretary of State, with Borrower as debtor and Original Lender as secured party, under Filing No. 2021525454 (the "Adventus 2 State UCC" and together with the Adventus 4 State UCC, the Adventus 5 State UCC, the Adventus 6 State UCC, the Adventus 8 State UCC, the Adventus 11 State UCC, the Adventus 13 State UCC, and the Adventus 1 State UCC, the "State Financing Statements"). True and correct copies of the State Financing Statements are attached hereto as **Composite Exhibit "E"**.

30.     The Loan Agreement, Note, Mortgages, Guaranty, State Financing Statements and all other documents executed or delivered in connection with the Loan, all as assigned by various instruments referred to herein and attached hereto, are collectively referred to herein as the "Loan Documents".

**B.  Assignment of the Loan**

31.     On or about August 5, 2021, Original Lender endorsed the Note by Allonge and delivered the original Note to the Trust. A true and correct copy of the aforementioned Allonge is affixed to the Note. *See* **Exhibit "B"**.

32.     On or about August 5, 2021, Original Lender assigned the Mortgages to the Trust

as follows: (i) the Adventus 4 Mortgage by that certain *Assignment of Mortgage* (the "<u>Adventus 4 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in DuPage County under Instrument Number R2023-041020; (ii) the Adventus 5 Mortgage by that certain *Assignment of Mortgage* (the "<u>Adventus 5 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in DuPage County under Instrument Number R2023-041023; (iii) the Adventus 6 Mortgage by that certain *Assignment of Mortgage* (the "<u>Adventus 6 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in Cook County under Instrument Number 2317906397; (iv) the Adventus 8 Mortgage by that certain *Assignment of Security Instrument* (the "<u>Adventus 8 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in Cobb County in Deed Book 16143, Page 2709; (v) the Adventus 11 Mortgage by that certain *Assignment of Security Instrument* (the "<u>Adventus 11 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in Cobb County in Deed Book 16143, Page 2680; (vi) the Adventus 13 Mortgage by that certain *Assignment of Security Instrument* (the "<u>Adventus 13 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in Fulton County in Deed Book 66946, Page 528; (vii) the Adventus 1 Mortgage by that certain *Assignment of Security Instrument* (the "<u>Adventus 1 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in Cobb County in Deed Book 16143, Page 2672; and (viii) the Adventus 2 Mortgage by that certain *Assignment of Security Instrument* (the "<u>Adventus 2 Mortgage Assignment #1</u>"), dated August 5, 2021 and recorded in Deed Book 16143, Page 2700. The Adventus 4 Mortgage Assignment #1, Adventus 5 Mortgage Assignment #1, the Adventus 6 Mortgage Assignment #1, the Adventus 8 Mortgage Assignment #1, the Adventus 11 Mortgage Assignment #1, the Adventus 13 Mortgage Assignment #1, Adventus 1 Mortgage Assignment #1, and the Adventus 2 Mortgage Assignment #1 are collectively referred to herein as the "<u>First Adventus Mortgage Assignments</u>", true and correct copies of which are attached hereto as **Composite Exhibit "F"**.

33.     Original Lender assigned the State Financing Statements to the Trust and, on or about September 28, 2021 the Trust filed the following UCC Financing Statement Amendments with the Delaware Secretary of State: (i) UCC Financing Statement Amendment Filing No. 20217738389 (the "Adventus 4 State UCC Amendment #1"); (ii) UCC Financing Statement Amendment Filing No. 20217738595 (the "Adventus 5 State UCC Amendment #1"); (iii) UCC Financing Statement Amendment Filing No. 20217739098 (the "Adventus 6 State UCC Amendment #1"); (iv) UCC Financing Statement Amendment Filing No. 20217737605 (the "Adventus 8 State UCC Amendment #1"); (v) UCC Financing Statement Amendment Filing No. 20217738843 (the "Adventus 11 State UCC Amendment #1"); (vi) UCC Financing Statement Amendment Filing No. 20217735997 (the "Adventus 13 State UCC Amendment #1"); (vii) UCC Financing Statement Amendment Filing No. 20217738025 (the "Adventus 1 State UCC Amendment #1"); (viii) UCC Financing Statement Amendment Filing No. 20217737126 (the "Adventus 2 State UCC Amendment #1").  The Adventus 4 State UCC Amendment #1, the Adventus 5 State UCC Amendment #1, the Adventus 6 State UCC Amendment #1, the Adventus 8 State UCC Amendment #1, the Adventus 11 State UCC Amendment #1, the Adventus 13 State UCC Amendment #1, the Adventus 1 State UCC Amendment #1, and the Adventus 2 UCC Amendment #1 are collectively referred to as the "First State UCC Amendments".  True and correct copies of the First State UCC Amendments are attached hereto as **Composite Exhibit "G"**.

34.     The Loan Agreement, Guaranty and all other agreements, certificates and documents executed or delivered in connection with the Loan were assigned by Original Lender to the Trust pursuant to that certain General Assignment dated August 5, 2021 (the "First General Assignment").  A true and correct copy of First General Assignment is attached hereto as **Exhibit "H".**

35.     On or about August 29, 2023, the Trust endorsed the Note to the Plaintiff by virtue

of an Allonge and delivered the original Note to the Plaintiff.  A true and correct copy of the aforementioned Allonge is affixed to the Note.  *See* **Exhibit "B"**.

36.     On or about August 29, 2023, the Trust assigned the Mortgages to the Plaintiff as follows: (i) the Adventus 4 Mortgage by that certain *Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 4 Mortgage Assignment #2"), dated August 29, 2023 and recorded in DuPage County under Instrument Number R2023-56117; (ii) the Adventus 5 Mortgage by that certain *Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 5 Mortgage Assignment #2"), dated August 29, 2023 and recorded in DuPage County under Instrument Number R2023-056118; (iii) the Adventus 6 Mortgage by that certain *Assignment of Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 6 Mortgage Assignment #2"), dated August 29, 2023 and recorded in Cook County under Doc#: 2324355155; (iv) the Adventus 8 Mortgage by that certain *Assignment of Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 8 Mortgage Assignment #2"), dated August 29, 2023 and recorded in Cobb County in Deed Book 16157, Page 58; (v) the Adventus 11 Mortgage by that certain *Assignment of Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 11 Mortgage Assignment #2"), dated August 29, 2023 and recorded in Cobb County in Deed Book 16157, Page 68; (vi) the Adventus 13 Mortgage by that certain *Assignment of Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 13 Mortgage Assignment #2"), dated August 29, 2023 and recorded in Fulton County in Deed Book 67139, Page 540; (vii) the Adventus 1 Mortgage by that certain *Assignment of Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 1 Mortgage Assignment #2"), dated August 29, 2023 and recorded in Cobb County in Deed Book 16157, Page 74; and (viii) the Adventus 2

Mortgage by that certain *Assignment of Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing* (the "Adventus 2 Mortgage Assignment #2"), dated August 29, 2023 and recorded in Deed Book 16157, Page 50.  The Adventus 4 Mortgage Assignment #2, Adventus 5 Mortgage Assignment #2, the Adventus 6 Mortgage Assignment #2, the Adventus 8 Mortgage Assignment #2, the Adventus 11 Mortgage Assignment #2, the Adventus 13 Mortgage Assignment #2, Adventus 1 Mortgage Assignment #2, and the Adventus 2 Mortgage Assignment #2 are collectively referred to herein as the "Second Mortgage Assignments", true and correct copies of which are attached hereto as **Composite Exhibit "I"**.

37.     The Trust assigned the State Financing Statements to the Plaintiff and, on or about August 31, 2023, the Plaintiff filed the following UCC Financing Statement Amendments with the Delaware Secretary of State: (i) UCC Financing Statement Amendment Filing No. 20235956536 (the "Adventus 4 State UCC Amendment #2"); (ii) UCC Financing Statement Amendment Filing No. 20235956601 (the "Adventus 5 State UCC Amendment #2"); (iii) UCC Financing Statement Amendment Filing No. 20235956981(the "Adventus 6 State UCC Amendment #2"); (iv) UCC Financing Statement Amendment Filing No. 20235957005 (the "Adventus 8 State UCC Amendment #2"); (v) UCC Financing Statement Amendment Filing No. 20235957088 (the "Adventus 11 State UCC Amendment #2"); (vi) UCC Financing Statement Amendment Filing No. 20235957120 (the "Adventus 13 State UCC Amendment #2"); (vii) UCC Financing Statement Amendment Filing No. 20235956403 (the "Adventus 1 State UCC Amendment #2"); (viii) UCC Financing Statement Amendment Filing No. 20235956478 (the "Adventus 2 State UCC Amendment #2"). The Adventus 4 State UCC Amendment #2, the Adventus 5 State UCC Amendment #2, the Adventus 6 State UCC Amendment #2, the Adventus 8 State UCC Amendment #2, the Adventus 11 State UCC Amendment #2, the Adventus 13 State UCC Amendment #2, the Adventus 1 State UCC Amendment #2, and the Adventus 2 State UCC

Amendment #2 are collectively referred to herein as the "Second State UCC Amendments".  True and correct copies of the Second State UCC Amendments are attached hereto as **Composite Exhibit "J"**.

38.     The Loan Agreement, Guaranty and all other agreements, certificates and documents executed or delivered in connection with the Loan were assigned by the Trust to the Plaintiff pursuant to that certain General Assignment dated August 29, 2023 (the "Second General Assignment").   A true and correct copy of Second General Assignment is attached hereto as **Exhibit "K"**.

39.     As of the filing of this action, the Plaintiff is in possession of the original Note.

40.     The Plaintiff is the owner and holder of the Note, Mortgages, Guaranty and the other Loan Documents by virtue of the aforementioned assignments.

**C.  Borrowers Stop Paying the Loan**

41.     Pursuant to the Loan Agreement, Note, and Mortgages, Borrowers are required to make monthly payments (each, a "Monthly Debt Service Payment") on the ninth (9th) day of each calendar month during the term of the Loan. *See* **Exhibit A**, Loan Agreement § 1.1 (definition of "Payment Date") and § 2.3.1.; **Exhibit B**, Note Article 1; **Composite Exhibit C**, Mortgages § 3.1 and § 3.2 ("All covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.").

42.     The Loan Agreement provides that it is an "Event of Default" if "any Monthly Debt Service Payment or any other regularly scheduled payment for a portion of the Debt (including, without limitation, payment by Borrower of any deposits to the Reserve Funds) . . . is not paid when due and such non-payment continues for five (5) Business Days following written notice thereof from Lender to Borrower[.]" *See* **Exhibit A**, Loan Agreement § 8.1(a)(i).

43.     Borrowers defaulted under the Loan Documents by failing to timely make the Monthly Debt Service Payment that came due on March 9, 2023 and all payments coming due thereafter as well as payments required to be deposited into the Reserve Funds (the "Payment Default").

44.     Lender's predecessor-in-interest, the Trust, sent Borrowers a notice of default on March 31, 2023, a copy of which is attached as **Exhibit "L"**.

45.     Pursuant to § 8.1 (b) of the Loan Agreement, "[u]pon the occurrence and during the continuance of an Event of Default . . . and at any time thereafter, in addition to any other rights or remedies available to it pursuant to th[e] [Loan] Agreement and the other Loan Documents or at law or in equity, Lender may take such action, without notice or demand, that Lender deems advisable to protect and enforce its rights against Borrower and in and to any or all of the Properties, including, without limitation, declaring the Debt to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower and any or all of the Properties, including, without limitation, all rights or remedies available at law or in equity[.]"  *See* **Exhibit A**, Loan Agreement § 8.1 (b).

46.     The Note provides Lender with the right to accelerate the Loan, by declaring the total unpaid principal balance of the Loan, with accrued interest and expenses, immediately due and payable.  *See* **Exhibit B**, Note Article 2.

47.     Lender elected to exercise its option under the Note to declare, and has declared, the total principal balance of the Note, with accrued interest and expenses, immediately due and payable.

48.     The Loan Agreement also provides that upon the occurrence of an Event of Default, the outstanding principal balance and all accrued and unpaid interest, shall accrue interest at the "Default Rate" (as defined on page 17 of the Loan Agreement) calculated from the date such

payment was due. *See* **Exhibit A**, Loan Agreement § 2.2.6.

49.     Now due and payable on the Note is the unpaid principal balance of $350,000,000, plus regular interest, default interest, late charges, costs, attorneys' fees, expenses, and all other charges and amounts accruing and imposed pursuant to the Loan Documents, the total of all of which is referred to herein as the "Indebtedness".

50.     In addition to repayment of the entire Indebtedness, under Section 8.1(b) of the Loan Agreement, which authorizes Lender to take any action that Lender deems advisable to protect and enforce its rights against Borrowers and to any or all of the Real Property, Lender is entitled to have a receiver appointed for the Real Property.  *See* **Exhibit A**, Loan Agreement § 8.1(b).

51.     Section 7.1 of the Mortgages also provides for the appointment of a receiver. This section states:

> **Remedies**.  Upon the occurrence and during the continuance of any Event of Default, Grantor agrees that Lender may take such action, without notice or demand to the fullest extent permitted by law, as it deems advisable to protect and enforce Lender's rights against Grantor and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:
>
> * * * * * *
>
> (g) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Grantor, any guarantor or any indemnitor with respect to the Loan or of any Person otherwise liable for the payment of the Debt or any part thereof;

52.     Section 16.2(C) of the Mortgages on the five (5) Georgia Properties also provides for the irrevocable consent of  Adventus 1, Adventus 2, Adventus 8, Adventus 11 and Adventus 13 to such appointment and contains an express waiver of all notices and defenses to the

appointment of a receiver after the occurrence of an Event of Default.

53.     Lender has performed all conditions precedent to Plaintiff's right to enforce the Loan Documents and under the law, or the same have occurred, have been performed, or have been waived.

54.     Lender has retained the services of Venable LLP and Bilzin Sumberg Baena Price & Axelrod LLP to represent it in this lawsuit, is obligated to pay said firms a reasonable fee for such services, and is entitled to recover its attorneys' fees, costs, charges, and all other expenses from Defendant pursuant to the terms of the Loan Documents and N.Y. Debt. & Cred. Law § 276-A.

### D.  The Guaranteed Obligations

55.     In order to induce Lender to make the Loan, Borrowers made a number of representations, warranties and covenants in the Loan Agreement.

56.     In Sections 4.1.30(a) and (f), respectively, of the Loan Agreement, Borrowers represented, warranted and covenanted that "[u]ntil the Debt has been paid in full . . . Borrower is, shall be and shall continue to be a Special Purpose Entity. . ." and that "from the date of its formation to the date hereof it has been a Special Purpose Entity."

57.     Despite the representations contained in the Loan Agreement, each of the Borrowers have failed to remain a Special Purpose Entity as required by the Loan Agreement.

58.     Pursuant to the Loan Agreement, a "Special Purpose Entity" means, *inter alia*, that Borrower:

> (l) **has at all times been and shall at all times intend to remain solvent and has paid and shall intend to pay its debts and liabilities** (including, a fairly-allocated portion of any personnel and overhead expenses that it shares with any Affiliate) **from its assets as the same shall become due**, and has maintained and shall intend to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; provided, however, that the foregoing shall not require any direct or indirect member or partner of such Special Purpose Entity to make any capital contributions or loans to such Special Purpose Entity;

* * * * *

(ee) **has not made and shall not make loans to any Person** and has not held and shall not hold evidence of indebtedness issued by any other Person or entity (other than cash and investment-grade securities issued by an entity that is not an Affiliate of or subject to common ownership with such entity);

* * * * *

(gg) other than capital contributions and distributions permitted under the terms of its organizational documents, **has not entered into or been a party to, and shall not enter into or be a party to, any transaction with any of its partners, members, shareholders or Affiliates** except in the ordinary course of its business and on terms which are commercially reasonable terms comparable to those of an arm's-length transaction with an unrelated third party;

**Exhibit A,** Loan Agreement, at pp. 40, 42 (emphasis added).

59.     In accordance with its rights under the Loan Documents, Lender received and revised copies of Borrowers' general ledgers for 2021, 2022 and 2023 (through April 30, 2023). Among other things, such examination revealed that each of the Borrowers maintained an asset account with a description containing "Due To/From" along with the words "Intercompany", "Adventus Holdings LP" or "US Opportunity LP".

60.     These ledgers demonstrate a multitude of transfers of funds from Borrowers to Guarantor and various other related and non-related entities, many of which were booked as loans to affiliated entities.

61.     In fact, almost immediately after the issuance of the Loan on July 1, 2021, Adventus 1, Adventus 6 and Adventus 8 made very large transfers of funds to Guarantor in the sum of $8.56 million, $6.255 million and $22.345 million, respectively.  Indeed, during the first two months after the issuance of the Loan, Borrowers made net transfers out of Borrowers' accounts to affiliates totaling approximately $85.9 million.

62.     These transfers continued throughout 2021, 2022 and 2023 resulting in the following net transfers out of Borrowers:

| **Borrower** | **Net Transfer From** |
|---|---|
| **Adventus 4** | **$6,442,658** |
| **Adventus 5** | **$8,319,235** |
| **Adventus 6** | **$10,764,901** |
| **Adventus 8** | **$30,504,421** |
| **Adventus 11** | **$13,514,143** |
| **Adventus 13** | **$9,098,407** |
| **Adventus 1** | **$19,101,648** |
| **Adventus 2** | **$14,819,549** |

63.     None of these transfers were supported by any consideration, let alone fair consideration.  Rather, each of the Borrowers was simply diluting itself of its assets and misappropriating Rents that constitute the Lender's collateral to enrich the Guarantor, their ultimate owners, principals and investors, and leave Borrowers insolvent.

64.     Borrowers continued to transfer funds out of the companies even after it stopped making payments on the Loan and funding reserves on March 9, 2023. The net transfers made to affiliates between March 9, 2023 and April 30, 2023 totaled approximately $3.57 million. During this time, Borrowers continued collecting Rents, which they did not turn over to the Lender in contravention of the Loan Documents.  Borrowers also failed to pay critical life safety invoices, utilities, and other operating expenses for the Real Property during this time period.

65.     The funds that were transferred out of the Borrower entities were derived from Rent collected by the Borrower from its tenants.  By misappropriating that rental income and unlawfully distributing it to its affiliates, Borrower breached the Guaranteed Obligations set forth in section 9.4(b) (v) of the Loan Agreement.

66.     Guarantor is responsible for the payment of Borrowers' Guaranteed Obligations. Specifically, Section 1.5 of the Guaranty provides that "[i]f all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon written demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein."

67.     Section 1.6 of the Guaranty further provides that "[i]t shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor [under the Guaranty], first to (a) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other person, (b) enforce Lender's rights against any collateral to secure the Loan, (c) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (d) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (e) exhaust any remedies available to Lender against any collateral to secure the Loan, or (f) resort to any other means of obtaining payment of the Guaranteed Obligations."   Therefore, Lender is entitled to enforce the Guarantor's obligations under the Guaranty without exhausting other remedies.

## Count I - Breach of Loan Documents
### (Against Borrowers)

68.     Lender re-alleges and reincorporates by reference paragraphs 1 through 67 of this Complaint as fully set forth in this Count.

69.     Lender is the owner and holder of the Loan Documents, which are valid and enforceable contracts.

70.     Pursuant to the Loan Agreement, Note and Mortgages, Borrowers were required to make monthly payments on the ninth (9th) day of each calendar month during the term of the Loan.

71.     Pursuant to the Loan Agreement, Note and Mortgages, Borrowers were required to pay to Lender the outstanding principal balance of the Loan, all accrued and unpaid interest and all other amounts due under the Loan Documents on July 9, 2023, the stated maturity date of the Loan.

72.     Borrowers breached the Loan Documents by, *inter alia*, (i) failing to make the Monthly Debt Service Payment coming due on March 9, 2023 and all payments due thereafter; (ii) failing to make required monthly reserve payments; and (iii) failing to pay the Loan in full on or before the stated maturity date of July 9, 2023.  Each of the foregoing defaults constitutes an Event of Default pursuant to Section 8.1(a)(i) of the Loan Agreement.

73.     Pursuant to Section 1.1(h) of the Mortgages, Lender has all right, title and interest in "all rents, additional rents, revenues, issues, profits. . ., income, fees, receivables, deposits" from the Mortgage Property.

74.     Borrowers failed to apply the Rents to the Indebtedness and have otherwise misappropriated the Rents after the Events of Default.

75.     Section 9.4 of Loan Agreement provides, in relevant part, that:

(b)  Nothing contained herein shall in any manner or way release, affect or impair the right of Lender to recover, and Borrower shall be fully and personally liable and subject to legal action, for any actual loss, cost, expense, damage, claim or other obligation (including without limitation reasonable third party attorneys' fees and court costs) incurred or suffered by Lender arising out of or in connection with the following:

    (ii) the willful misconduct of any Borrower Party in connection with the Loan;

* * * * *

(v) the misappropriation, misapplication, or conversion by any Borrower Party of (A) any Insurance Proceeds paid to any Borrower Party by reason of any Casualty, (B) any Awards received by any Borrower Party in connection with a Condemnation, (C) any Rents received by any Borrower Party following an Event of Default, or (D) any Rents paid to any Borrower Party more than one (1) month in advance;

\* \* \* \* \*

(xii) except as covered by the full recourse item set forth in clause (c)(vi) below, a breach by Borrower of any representation, warranty or covenant set forth in Section 4.1.30 hereof (other than with respect to any representation, warranty or covenant related to the solvency or capitalization of Borrower after the date hereof).

76.     Borrowers' transfers of funds to its affiliates constitute a breach of the Guaranteed Obligations, including Section 4.1.30 of the Loan Agreement, and an Event of Default under Section 8.1(a)(x). Specifically, Borrowers breached Section 4.1.30 by engaging in the wrongful transfers of substantially all of their income, none of which were made with fair consideration, and in good faith, and by purposefully becoming insolvent. Borrowers have also breached the Loan Agreement by failing to observe all corporate formalities as evidenced by the intercompany transfers.

77.     Borrowers are liable for their misappropriation of rents as well as Lender's damages resulted from their failure to comply with the requirements of maintain their status as a Special Purpose Entity.

78.     Because the Loan has matured, the total principal balance of the Note, with accrued interest and expenses, is immediately due and payable.

79.     Borrowers have failed to repay the Loan thereby damaging Plaintiff.

80.     Article 11 of the Note provides that the Borrowers are jointly and severally liable for the Indebtedness.

81.     Based upon the foregoing, Borrowers are jointly and severally liable for the Indebtedness.

WHEREFORE,  Plaintiff RSS CSMC2021 – ADV – DE AUR, LLC prays that the Court:

a.      Enter a judgment in Plaintiff's favor and against Borrowers for the misappropriation of Rents in an amount to be determined at trial, plus applicable pre- and post-judgment interest, costs, fees and expenses incurred enforcing the Loan Documents;

b.      Enter a judgment in Plaintiff's favor and against Borrowers for the actual loss, costs, expenses or damages resulting from the Borrowers' breach of the representations, warranties and covenants contained in Section 4.1.30 of the Loan Agreement in an amount to be determined at trial, plus applicable pre- and post-judgment interest, costs, fees and expenses incurred enforcing the Loan Documents;

c.      Enter a judgment in Plaintiff's favor and against Borrowers determining the amount due under the Loan Documents, including without limitation contract rate interest, default interest, late fees, reasonable attorneys' fees, costs, and expenses, together with such additional relief as the Court deems just and proper; and

d.      Award Plaintiff its attorneys' fees and costs incurred herein, and such other and further relief as is just and equitable.

### Count II – Breach of Guaranty
**(Against Guarantor)**

82.     Lender re-alleges and reincorporates by reference paragraphs 1 through 81 of this Complaint as fully set forth in this Count.

83.     Lender is the owner and holder of the Loan Documents.

84.     The Loan Documents, including the Guaranty, are valid and enforceable contracts.

85.     Pursuant to Section 1.5 of the Guaranty, the Guarantor irrevocably, and unconditionally, guaranteed the prompt payment and performance when due of the "Guaranteed Obligations" (as such term is defined in the Guaranty), which includes payment of the Indebtedness.

86.     Borrowers continued to transfer funds out of the companies even after it stopped making payments on the Loan and funding reserves on March 9, 2023. The net transfers made to affiliates between March 9, 2023 and April 30, 2023 totaled approximately $3.57 million. During this time, Borrowers continued collecting Rents, which they did not turn over to the Lender in contravention of the Loan Documents.  Borrowers also failed to pay critical life safety invoices, utilities, and other operating expenses for the Real Property during this time period.

87.     The funds that were transferred out of the Borrower entities were derived from Rent collected by the Borrower from its tenants.  By misappropriating that rental income and unlawfully distributing it to its affiliates, Borrower breached the Guaranteed Obligations set forth in section 9.4(b) (v) of the Loan Agreement.

88.     Pursuant to Sections 9.4(b)(iv), (v) and (xii) of the Loan Agreement, Guarantor is liable for the Borrowers' breach of the Guaranteed Obligations including, but not limited to, "the misappropriation, misapplication, or conversion by any Borrower Party of … any Rents received by any Borrower Party following an Event of Default" and "breach by Borrower of any representation, warranty or covenant set forth in Section 4.1.30 hereof[.]"

89.     Borrowers also breached the Guaranteed Obligations by failing to adhere to the requirements of a Special Purpose Entity by, among other things, (i) failing to remain solvent and pay their debts and liabilities as they came due; (ii) making intercompany loans; and (iii) engaging in unauthorized and improper transactions with their partners, members, shareholders and affiliates.

90.     Borrowers further breached the Guaranteed Obligations by misappropriating the rents and transferring millions of dollars from the Borrowers without receiving adequate consideration.

91.     Pursuant to Section 1.8 of the Guaranty, Lender is entitled to recover  its attorneys' fees and costs from Guarantor as a result of having to file this action.

WHEREFORE, Plaintiff RSS CSMC2021 – ADV – DE AUR, LLC prays that the Court:

a.      Enter a judgment in Plaintiff's favor and against Guarantor for the misappropriation of Rents in an amount to be determined at trial, plus applicable pre- and post-judgment interest, costs, fees and expenses incurred enforcing the Loan Documents;

b.      Enter a judgment in Plaintiff's favor and against Guarantor for the actual loss, costs, expenses or damages resulting from the Borrowers' breach of the representations, warranties and covenants contained in Section 4.1.30 of the Loan Agreement in an amount to be determined at trial, plus applicable pre- and post-judgment interest, costs, fees and expenses incurred enforcing the Loan Documents; and

c.      Award Plaintiff its attorneys' fees and costs incurred herein, and such other and further relief as is just and equitable.

### Count III - Appointment of Receiver
**(Against Borrowers)**

92.     Lender re-alleges and reincorporates by reference paragraphs 1 through 91 of this Complaint as fully set forth in this Count.

93.     Borrowers have not only ceased paying their Monthly Debt Service Payment, but have also failed and refused to pay critical life safety expenses, utilities, and other basic operating expenses for the Real Property.

94.     In addition, (i) several creditors have filed liens against the Real Property because they allege they have gone unpaid by the Borrowers for services rendered in connection with the Real Property, and (ii) several tenants of the Real Property have alleged breaches by Borrowers of their obligations under the leases that govern their tenancy and which comprise collateral for the Loan.

95.     Borrowers have informed Lender that they are without sufficient funds to pay basic operating expenses or to continue to operate the Real Property and that Borrower's owners are unwilling or unable to fund further investment in the Real Property.

96.     Further, an examination of the Borrowers' records indicates that Borrowers misappropriated Rents during the term of the Loan and continued to do so even after they ceased paying critical operating expenses or making their Monthly Debt Service Payment.

97.     As a result of the Borrowers' refusal or inability to perform obligations relating to the Real Property, there is an imminent threat of loss, damage, destruction, and/or diminishment in value to the Real Property and to the stream of rental income that secures the Mortgages and serves as collateral for the Loan.

98.     Borrowers do not have a continued economic interest in the Encumbered Property because Borrowers indebtedness to Lender exceeds the value of the Encumbered Property.

99.     Due to the Borrowers' refusal or inability to pay necessary expenses for the Real Property, its lack of a continued economic interest in the Encumbered Property, or its prior misappropriation of Rents, it is appropriate and necessary that a receiver be appointed to preserve, protect, manage, and sell the Encumbered Property.

100.     Lender requests that the Court appoint Matthew D. Mason of Riveron RTS, LLC as receiver of the Encumbered Property pursuant to 28 U.S.C. §§ 754 and 3103, which allows a receiver to be appointed in any civil action involving property situated in different districts to "be vested with complete jurisdiction and control of all such property with the right to take possession thereof."

101.     Mr. Mason has the requisite competence and qualifications, and extensive experience serving as receiver in similar situations.

102.    Mr. Mason has advised Plaintiff that it is ready, willing and able to be appointed and to serve as receiver for the Encumbered Property, subject to the orders of this Court.

WHEREFORE, Plaintiff RSS CSMC2021 – ADV – DE AUR, LLC requests that this Court enter an Order:

a.    appointing Matthew D. Mason of Riveron RTS, LLC as receiver for the Encumbered Property;

b.    granting the Receiver all of the power and authority necessary for the operation of the Encumbered Property;

c.    requiring that Borrowers immediately vacate and surrender possession of the Encumbered Property to the Receiver, along with any related accounts and monies generated from the Encumbered Property that are in possession of the Borrowers;

d.    taxing the costs of the Receiver as recoverable costs against the Borrowers; and

e.    granting such additional relief as this Court deems just and proper.

Dated: September 18, 2023
New York, New York

VENABLE LLP

By:    */s/  Gregory A. Cross*
Gregory A. Cross
Heather Deans Foley (to be admitted *pro hac vice*)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 244-7400
gacross@venable.com
hdfoley@venable.com

-and-

Adam Possidente
151 W. 42nd Street, 49th Floor
New York, NY 10036
Telephone: (212) 307-5500
apossidente@venable.com

*Counsel for Plaintiff*